415 So.2d 535 (1982)
Guy J. BETHEA, II, and Barbara Bryant Bethea
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
No. 14878.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*536 Steven R. Giglio, Baton Rouge, for plaintiffs-appellees Guy J. Bethea, II, and Barbara Bryant Bethea.
Warren L. Mengis, Robert H. Carpenter, Baton Rouge, for defendant-appellant La. Dept. of Transp.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
SHORTESS, Judge.
Guy J. Bethea, III, was killed in a single-car accident which occurred in East Baton Rouge Parish on Louisiana Highway 946 (Joor Road) at approximately 2:00 a. m. on December 23, 1978. Guy J. Bethea, II, and Barbara Bryant Bethea, parents of decedent, instituted this wrongful death action against the Louisiana Department of Transportation and Development (DOTD) and the Parish of East Baton Rouge. The Parish was dismissed from the suit on motion for summary judgment which has become final. *537 After trial, the trial judge, with oral reasons, found DOTD guilty of negligence, found decedent free of negligence, and awarded judgment to plaintiffs for $50,000.00 each for loss of love and affection and $4,010.00 in special damages. DOTD has appealed suspensively and plaintiffs' answered the appeal, seeking an increase in the award of general damages.
The specifications of error are (1) the trial court erred in finding that the negligence of DOTD was the sole cause of the accident; and (2) the trial court erred in finding no negligence and/or fault on the part of Guy J. Bethea, III, which would preclude plaintiffs' recovery against DOTD.
FACTS
Testimony taken from the various witnesses established that decedent was 18 years old at the time of his death, resided with plaintiffs, and was a loving and caring child; that on the night in question decedent was driving a 1975 Ford Pinto which belonged to his father; that around 11:00 p. m. he met Carey Gray, 15 years old, and they spent several hours riding around; that they were proceeding in a general southerly direction on Joor Road; that they passed the Comite River Bridge and went into a curve which banked toward the left; that decedent sneezed and then said, "Oh, My God, hold on;" that the right wheels went off the road and the car traveled for some distance and then slid across the road, flipped over, hit a tree and instantly killed decedent, who suffered massive head and neck wounds; that there was a four- to five-inch drop-off between the road and the shoulder at the spot where decedent's car left the road; that the shoulder was a mixture of dirt and gravel; that the road is 28 feet wide at the Comite River Bridge but narrows going south toward Jones Bayou Bridge from 28 feet to 20 feet, reducing the two lanes of travel from 14 feet to 10 feet; that approximately 98 feet from Jones Bayou Bridge certain warning signs were on the shoulder to warn approaching traffic of the bridge; that the guard rail leading to the bridge also began at that spot; that the distance from the Jones Bayou Bridge to the stump of the tree in question is 166.5 feet.
Harlan T. Melander, Jr., a Louisiana State Police trooper, investigated the accident. He arrived on the scene shortly after 2:00 a. m. on December 23. His investigation revealed that the accident took place on Joor Road approximately two miles north of Greenwell Springs Road; that only one vehicle was involved, which had been proceeding in a southerly direction; that the road surface was smooth but the shoulder was a mixture of dirt and gravel; that there was a drop-off between the roadway and the shoulder of four to five-inches; that decedent's vehicle traveled about three feet off the roadway as it went onto the shoulder, then continued in a southerly direction a total of 152 feet and 9 inches, then re-entered the roadway in a slide, at approximately a 45°-angle, traveled across the road onto the shoulder for northbound traffic and came to rest after striking a tree approximately 18 feet from the road; that the total distance traveled from the point the vehicle left the road until it hit the tree was 324½ feet, measured in a straight line; that he requested the assistant coroner, Michael J. Williams, to obtain a blood sample; that after Williams obtained the sample, he took the kit and turned it in for chemical analysis.
Plaintiff presented two independent expert witnesses, Dwaine Evans and Jack Humphries. Both were of the opinion that there were several major contributing factors to the accident. (1) The roadway narrowed eight feet as it approached Jones Bayou Bridge. This factor could cause a driver to drop a wheel off the road. Many drivers had done this in the past, causing the rut to be long and deep. (2) The rutting along the pavement edge created a difference in elevation of approximately five inches. This factor makes it most difficult for a driver to regain the roadway. If a driver attempts to immediately return to the roadway without reducing speed appreciably, a dynamic force is created which causes a side slide or even a roll. (3) The impending danger signaled by the warning *538 signs could make a driver return to the roadway before he had slowed sufficiently to do so safely. (4) The tree and its proximity to the road created an obvious hazard.
The trial judge found DOTD guilty of negligence and said:
The court believes that a five inch drop off the narrowness of the taper, the rutting along the side of the road with a 5-inch drop-off, the poor condition of the shoulder of the road was a cause of the accident, and as a result the court holds that the Department was negligent in the maintenance of this road.
The DOTD has the basic responsibility for maintaining State highways. LSA-R.S. 48:21. It is required to maintain highways in a reasonably safe condition for motorists exercising ordinary care and prudence. Although DOTD is not an insurer of the safety of a motorist using State highways, it cannot knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Watson v. Morrison, 340 So.2d 588 (La.App.1st Cir. 1976), writ denied, 341 So.2d 1134 (La.1977). Included within DOTD's duties is the maintenance of highway shoulders. Rue v. State, Department of Highways, 372 So.2d 1197 (La. 1979).
Harvey Schaefer, DOTD's road design engineer, was in charge of a resurfacing project for Joor Road in 1976 which was restricted to the existing right-of-way and alignment. At that time, Schaefer noted that Joor Road's pavement width and shoulder were extremely substandard; that numerous large trees posing a very high potential for fatal accidents were within 10 to 15 feet of the pavement edge; that in some areas, especially where the horizontal curves were most frequent, there were insufficient shoulders which would be aggravated by new overlay. He felt high priority should be given to the reconstruction of this section of Joor Road. The trees were not removed because the road was in need of total reconstruction. DOTD has a duty to remove obstacles which are dangerously close to the traveled portion of its highways. Wilson v. Dept. of Highways, 364 So.2d 1313 (3d Cir. 1978), writ denied 366 So.2d 563 (La.1979).
All of DOTD's witnesses were in agreement that a drop-off of more than two inches created a dangerous condition. Here, there is no serious argument that the drop-off was approximately five inches and had existed along the curve for some time prior to this accident.
Joseph N. Stein, East Baton Rouge Superintendent for Maintenance, testified that at this accident site the shoulder had not been made flush with the road surface after the overlay project in 1976 and the last work done on Joor Road was in August of 1978.
DOTD does not contend that it was free from fault or negligence in this case, but does argue that its fault was not the sole cause of the accident. The plaintiffs have clearly shown that the trial court's conclusion concerning DOTD's negligence was correct. We agree that the narrowing of the road as a southbound motorist approached the Jones Bayou Bridge might cause a driver to leave the traveled portion of the road surface; that such constant repetitions created the deep rut which remained unrepaired for a considerable period of time; that the tree was too close to the road; and that the hazard markers and guard rail announcing the bridge could create a problem, especially to the approaching driver who had left the roadway.
The main thrust of DOTD's argument is that decedent was guilty of fault which would preclude plaintiffs' recovery. DOTD strongly suggests two issues relative to decedent's fault. The first is:
EXCESSIVE SPEED, INATTENTION, AND INAPPROPRIATE REACTION.
The burden of proof was upon DOTD to show by a preponderance of evidence that decedent was guilty of negligence or fault. Don L. Ivy, expert traffic engineer, visited the accident site and determined that a driver could safely negotiate the curve in question at speeds up to sixty miles per hour. Using information gathered primarily from Trooper Melander's accident report, *539 Ivy estimated that decedent was traveling at least 66 miles per hour when he left the paved surface and could have regained the road surface by slowing down before he attempted to re-enter. After persistent questioning on cross examination by DOTD's counsel relative to speed, Carey Gray estimated decedent's speed at the time as, "about the speed limit." The speed limit on Joor Road at that point was 40 miles per hour.
The trial judge in his oral reasons said:
There is also a defense of contributory negligence based upon excessive speed, inattention, inappropriate reactions. After considering all of the evidence the Court is not convinced that these defenses have merit, and the Court holds that the proximate cause of this death was the poor condition of the shoulder of the road.
DOTD's second contention relative to decedent's fault is:
INTOXICATION.
A blood sample was obtained by deputy coroner Williams after he arrived at the scene. Williams is not a medical doctor or medically trained. He had been a deputy sheriff before becoming a deputy coroner. He testified that he extracted blood from what he believed was decedent's heart. The blood sample taken by him was chemically analyzed by the Department of Public Safety, and it showed a .12% blood-alcohol level by weight.
Dr. Monroe Samuels, a pathologist and Director of Pathology at the LSU Medical Center, testified by deposition. His opinions were based primarily upon a review of Williams' deposition. He said that a blood sample must be drawn from an intact part of the vascular system with proper equipment. He felt that blind sampling through the chest wall was not an acceptable practice and specifically felt Williams' sample was inadequate because it had not been obtained under direct visualization. Other circumstances strengthened his feeling that the sample in question was less than satisfactory. Decedent was almost decapitated, so he felt little if any blood would have been present within the heart or aorta since the carotid arteries would have been severed and lost. He also felt that since decedent sustained severe chest trauma, the blood in his chest came from the lacerations of his heart and greater vessels, and an adequate sample from the heart could not be obtained. Dr. Samuels was of the opinion, however, that the sample did prove that the decedent had been drinking prior to the accident but it was useless for purposes of quantitative analysis.
Carey Gray testified that neither he nor decedent had any alcoholic beverages after they got together at 11:00 p. m. In Case v. Arrow Trucking Company, 372 So.2d 670 (La.App.1st Cir. 1979), writ denied 375 So.2d 944 (La.1979), a blind blood sample was taken, by a medical doctor, and we stated therein:
Our jurisprudence establishes that in a civil action there is no presumption of intoxication based on blood alcohol level. Prestenbach v. Sentry Insurance Company, supra. From the testimony, the jury could have reasonably concluded the samples were not valid and did not reflect the true alcoholic level of Este's blood. Because blood alcohol content creates no presumption of intoxication in a civil case, the jury may also have reasonably found that, assuming the sample to be valid, it did not ipso facto establish the degree of Este's impaired driving ability, if any. Considering all of the evidence on the issue, we find no manifest error in the jury's rejection of the defense of intoxication. 372 So.2d at 683.
Here, the trier of fact specifically rejected the defense of intoxication, saying:
... the evidence is clear that the blood sample was taken by one who was not qualified to do it....
and
... the court feels that it has not been shown that any drinking was affecting this young man's driving.
We cannot say that the trial judge was in error in resolving the liability aspects of this case in favor of plaintiffs. The test of *540 proper appellate review is to give great weight to the determination of the trial judge and to overturn him only when his findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
QUANTUM
The final issue is quantum. Plaintiffs have answered the appeal and ask that the amount awarded for loss of love and affection be increased from $50,000.00 to $75,000.00 each. The decision of the trial judge relative to quantum is entitled to great weight and may not be altered in the absence of a showing of a clear abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We find that the trial judge did not abuse his discretion herein, and his award of general damages was well within the great discretion permitted by law.
For the foregoing reasons, the decision of the trial court is affirmed at DOTD's costs, which are fixed at $1,386.19.
AFFIRMED.