604 So.2d 99 (1992)
Glinda G. BROWN, Plaintiff-Appellee,
v.
DEPARTMENT OF TRANSPORTATION, et al., Defendant-Appellant.
No. 91-136.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
*100 Durant, Pierce & Malone, A. Clay Pierce, Jr., Baton Rouge, for State, appellant.
Anthony Fazzio, Lafayette, for Winifred Weston, appellee.
Gerard B. Wattingny, New Iberia, for Brown, appellee.
John F. Wilkes, III, Lafayette, for Wiles and AM Specialty Ins., appellee.
Before DOMENGEAUX, C.J., DOUCET, J., and PATIN[*], J. Pro Tem.
JOHN A. PATIN, Judge Pro Tem.
The captioned case was consolidated with Weston v. Department of Transportation, 604 So.2d 107 (La.App. 3d Cir.1992), for trial and appeal.
These lawsuits concern a car accident involving one vehicle and an allegedly defective shoulder. The driver of the 1981 Chevrolet Blazer involved was Harry L. Wiles, and his passengers were Glinda G. Brown, Esau Herbert and Melvin Boutte. The Blazer went out of control and crashed. Herbert was killed and the other occupants of the Blazer were injured. Glinda Brown filed suit against General Motors, Wiles and the State of Louisiana through the Department of Transportation and Development (DOTD). Winifred Weston, widow of Herbert, filed suit against the same defendants in her own behalf and as representative of Herbert's three minor *101 children Tomeka, Tanya and Carlos. Prior to trial Winifred Weston, et al. effected a settlement with General Motors and the matter proceeded to trial against Wiles and DOTD. Glinda Brown settled her claims with General Motors and Wiles prior to trial and her suit was tried on her claims against DOTD.
The accident occurred at approximately 3:40 P.M. on November 6, 1982 as the Blazer was Southbound on Louisiana Highway 83, approximately 2/10 miles South of Lydia, Louisiana. As the Blazer approached a curve to the left, Wiles observed an oncoming vehicle near the center line and moved toward the edge of the highway. The right wheels of the vehicle left the highway, and Wiles drove along the Southbound shoulder "for some distance". When Wiles attempted to re-enter the highway, he encountered a 2½ to 3 inch difference between the shoulder and the highway. The Blazer went out of control and crossed over to the Northbound shoulder. Upon the Blazer's second attempt to re-enter the highway it flipped over, its top sheared off and Herbert and Brown were ejected from it. Herbert was killed, while Brown was seriously injured. Wiles and Boutte sustained superficial injuries.
Following a bench trial of these consolidated cases judgment was rendered finding DOTD 50% at fault, Wiles 10% at fault and General Motors 40% at fault. Damages were awarded to all plaintiffs. DOTD appealed. Brown, Weston and Wiles each answered this appeal arguing that the trial court erred in finding General Motors 40% negligent and Wiles 10% negligent, but rather should have found DOTD 100% negligent. Damages were awarded in the following amounts for the following items: to Brown $25,616.50 medical expenses, $16,749 lost wages (11/82-9/83), $200,000 general damages; to Weston $6,000 pain and suffering of Herbert, $200,000 loss of consortium, $275,260.25 loss of support; to each of Herbert's three minor children, Tomeka, Tanya and Carlos $2,000 pain and suffering of Herbert, $150,000 loss of consortium, $91,753.42 loss of support.
The first DOTD assignment of error alleges that the trial judge erred in finding that:
the deciding fact as to whether the shoulder was negligently maintained was the depth of the shoulder drop-off at the point where the Blazer first re-entered the highway.
13 days after the accident, limestone was added to the shoulders, covering the cationic material, at the location of this accident.
the drop-off from the asphalt to the cationic material was greater than two inches.
more probably than not, the drop-off at the point where the Blazer re-entered the highway was between 2½ to 3 inches.
the condition of the shoulder where the accident occurred was sub-standard and defective.
the DOTD was at fault in any percentage or amount for the accident.
In its reasons for judgment the trial court stated:
Plaintiffs and Mr. Wiles also claim that the negligently maintained shoulder was a cause of the accident. The deciding fact on this issue is the depth of the shoulder drop off at the point that the Blazer first re-entered the highway. The pictures of the scene reveal the asphalt highway edged with cationic material. On the day of the accident no one measured the drop off from the asphalt to the cationic material. Trooper estimated the drop off to be 1 to 1½ inches. He made no measurements. Two or three days after the accident, Ovay Viator, district maintenance supervisor for DOTD, went to the scene. He examined the shoulder for a distance of 100 to 150 feet from the wreckage and measured the shoulder drop off in several places. Most of the drop offs were 1 to 1½ inches. These measurements are useless, since the Blazer re-entered the highway for the first time over 430 feet from its final resting place.
Mr. Duane Evans was the only person to measure the drop off in the area where the Blazer first re-entered the *102 highway. In February, 1983 he measured a drop off of two inches or more from the asphalt to the limestone adjacent to it. He saw no cationic material. Thirteen days after the accident limestone was added to the shoulders, covering the cationic material. Obviously, the drop off from the asphalt to the cationic material was greater than two inches.
More probably than not the drop off at the point where the Blazer re-entered the highway was 2½ to 3 inches. This condition is substandard and defective. DOTD is negligent for allowing this condition to exist and is responsible as the owner of a defective thing.
DOTD's duty to maintain state highways and shoulders is well established in our statutory and jurisprudential law.
La.R.S. 48:21, in relevant part, provides:
A. The functions of the [DOTD] shall be to ... construct, improve, maintain, repair, ... the use of public transportation systems and to perform such other functions with regard to public highways, roads, and other transportation related facilities as may be conferred on the department by applicable law.
Bethea v. La. Dept. of Transportation and Development, 415 So.2d 535 (La.App. 1st Cir.1982), involved a wrongful death claim against DOTD by the parents of a driver killed in a single car accident. The vehicle involved in Bethea, while in a curve to the left, lost its right wheels to the shoulder, travelled for some distance and then slid across the road, flipped over and hit a tree. The shoulder was four to five inches lower than the main road. The court held that:
The DOTD has the basic responsibility for maintaining State highways. LSA-R.S. 48:21. It is required to maintain highways in a reasonably safe condition for motorists exercising ordinary care and prudence. Although DOTD is not an insurer of the safety of a motorist using State highways, it cannot knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Watson v. Morrison, 340 So.2d 588 (La. App. 1st Cir.1976), writ denied, 341 So.2d 1134 (La.1977). Included within DOTD's duties is the maintenance of highway shoulders. Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979)....
Also see our opinion in Grappe v. State, Department of Transportation & Dev., 462 So.2d 1337 (La.App. 3d Cir.1985).
All of DOTD's witnesses were in agreement that a drop-off of more than two inches created a dangerous condition.
Bethea, supra at 538.
Additionally, in Grappe, supra at 1341, we held that:
[T]he Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. Rue v. State Dept. of Highways, 372 So.2d 1197 (La.1979).
Regarding DOTD's assignment of error to the trial court's findings regarding the "deciding fact as to whether the shoulder was negligently maintained", we have previously held that:
Causation is a question of fact as to which the trial court's determinations are entitled great weight and should not be disturbed absent manifest error.
Grappe, supra at 1340.
Furthermore, in Grappe, supra we noted that:
(DOTD) allowed a defect to exist in its shoulder in the form of loose gravel at the point at which Mary Janette Graham attempted a reentry to the highway.

Grappe, supra at 1342, (Stoker concurring).
Regarding DOTD's assignment of error to the trial court's assessing it 50% at fault, we have previously held that:
... a trier's findings, as to percentages of fault ... [are] factual ... Triangle Trucking Co. v. Alexander, 451 So.2d 638, 642 (La.App. 3d Cir.1984).
Additionally, in a related assignment of error, DOTD assigns error to the trial court's: *103 Concluding that the measurements of Ovey Viator at the accident scene were useless.
The trial court's basis for this finding was that although Viator measured the shoulder drop-off in several places, he did not measure the drop-off at the point where the Blazer re-entered the highway. The record reviewed in its entirety, discloses that the trial court's finding was not manifestly erroneous. This DOTD assignment of error is without merit.
After reviewing the record in its entirety we find the other DOTD assignments of error, listed supra, to be without merit because the trial court did not commit manifest error regarding these findings of fact and reasonable inferences of fact.
In its reasons for judgment, the trial court also stated that:
The drop off caused Mr. Wiles to completely lose control of the Blazer. If the drop off were less severe, the accident would not have occurred.
DOTD next assigns error to the trial court's refusal to consider Wiles' driving record and its conclusion that the state failed to prove that Wiles habitually speeds.
In its reasons for judgment, the trial court stated that:
Neither the curve nor his speed caused [Wiles] to leave the highway. He was attempting to avoid oncoming traffic.
Thus, the trial court specifically determined that Wiles' speed did not cause the accident. After reviewing the record in its entirety, we cannot say that this determination regarding causation was manifestly erroneous. Therefore, there seems little relevance to this DOTD assignment of error.
Furthermore, at trial Wiles testified that as he approached the part of the highway where the accident happened his speed was, "50, 55 miles an hour". Louisiana State Police Officer LaSalle testified that when he spoke with Wiles at the accident scene, Wiles told him that his speed had been "between 60 and 65 miles an hour". However, Officer LaSalle also testified that when he arrived at the accident scene, Wiles was sitting in the field adjacent to the Blazer, and that when Wiles spoke with him "[Wiles] was upset about the whole situation ... [h]e was very upset about his friend that had gotten killed, and the injuries to his other friends". Wiles testified that there were no speed limit signs posted in the area of the accident, and that he thought the speed limit was 55 miles an hour. Officer LaSalle was neither questioned on nor did he discuss the speed limit in the area of the accident.
To the extent that the trial court resolved this conflict in the testimony before it against DOTD, we cannot say that the trial court's evaluations of credibility and inferences of fact were unreasonable, and thus we may not upset the trial court's choice of Wiles' testimony over Officer LaSalle's. We do not find merit in this DOTD assignment of error.
DOTD next assigns error to the trial court's finding that DOTD's chain of alcohol evidence was insufficient, and the trial court's failure to consider the alleged effect that alcohol had upon Wiles at the time of the accident.
While it is true that Wiles testified that on the day of the accident he had one beer while eating bar-b-que chicken, potato salad and bread, this was at noon, and the accident occurred approximately four hours later. Furthermore, Wiles' blood sample was drawn from him between 5:00 and 5:30 P.M. on the day of the accident. Given these facts, DOTD attempted to establish that at the time of the accident Wiles' blood alcohol level was between .044 and .068. DOTD challenges the trial court's finding that it had not properly proven the "alcohol chain" to establish the validity of the evidence it sought to introduce, citing Wells v. State Farm Mutual Automobile Ins. Co., 573 So.2d 223 (La.App. 1st Cir.1990).
*104 Wells involved a lawsuit by one motorist against the other motorists in the accident at issue therein. The trial court, in ruling in favor of the defendant motorists, had allowed into evidence the plaintiff motorist's blood alcohol test results. On appeal the Wells court held that:
the trial judge erred in considering the results of the blood alcohol test because the defendants did not lay a proper foundation for the introduction of the evidence;
The court explained:
The requirements for the introduction of a blood test analysis are very stringent; the party seeking to introduce such evidence must first lay a proper foundation for its admission. Pearce v. Gunter, 238 So.2d 534 (La.App. 3d Cir.), application not considered, 256 La. 888, 239 So.2d 543 (La.1970). This predicate must connect the specimen with its source, show that it was properly taken by an authorized person, properly labeled and preserved, properly transported for analysis and properly tested. Pearce v. Gunter, 238 So.2d at 537.
`The purpose of the chain of custody rule [as a proper foundation for admission of the blood test results] is to assure the integrity of the evidence, i.e., to prevent the evidence from being tampered with or from being lost.' Bufkin v. Mid-American Indemnity Co., 528 So.2d 589, 592 (La.App. 2d Cir.1988). (Citation omitted).
Applying these requirements to the case sub judice, we find that the defendant did not lay a proper foundation for admission of the test results. The defendants did not show that the blood was properly taken, properly preserved, and properly transported for analysis.... `Unless proof is made of the proper preservation of the blood sample between the time it is taken and its testing, the subsequent results are unreliable evidence and properly excluded.' Allemand [ v. Zip's Trucking Co.], 552 So.2d [1023] at 1027 [(La.App. 1st Cir.1989)] (Citations omitted).
In the case sub judice the learned trial judge explained his decision to sustain Wiles' objection to the DOTD blood alcohol test results, to-wit:
[S]ome of the problems that the Court sees with it is, first of all, there's no evidence as to what kind of kit was used. Whether that kit was approved by the regulations, and whether that kit had any preservative in it, or whether that kit had, was outdated or not. Whether the effected date had past on it. Whether it was one of the kits approved by the State for that purpose. And with regard to the, what the State regulations require that those, the lot from which that kit is taken be checked, and that there be a record of that, I don't know whether that's been done. There's been no evidence of that. With regard to the machine that was used to analysis it, there was nothing as to when that machine was last repaired, whether it was certified for use for that purpose. And the trooper doesn't recall what he did with the sample, if he, he doesn't recall if he took the sample from the hospital, and if he did, what he did with them. For all those reasons, the objection is sustained.
After reviewing the record in its entirety, we find the record to support the trial court's concerns and decision. We do not find that the trial court's exclusion of the DOTD blood alcohol test results was erroneous. Furthermore, we find that the record discloses that the trial court gave the DOTD allegations of Wiles' intoxication at the time of the accident, the weight they deserved. We do not find merit in this DOTD assignment of error.
DOTD's last assignment of error assigns error to the trial court's damage awards to the Weston children, claiming that the same are grossly excessive. In its brief DOTD challenges the following amounts in damages awarded to Mrs. Weston and the Weston children:

*105
To Winifred Weston:
pain & suffering of Esau Herbert...................................$6,000
To each of Esau Herbert's three minor children, Tomeka, Tanya and
Carlos:
pain & suffering of Esau Herbert...................................$2,000
Loss of consortium...............................................$150,000
Loss of support................................................$91,753.42

We are asked to upset damage awards made by a trial court on the facts, evidence and arguments before it. We note the command of our civil code, to-wit:
When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages.
La.Civ.Code art. 1999.
Furthermore, our Supreme Court also provides us with guidance in addressing this DOTD assignment of error. In Reck v. Stevens, 373 So.2d 498 (La.1979), the Louisiana Supreme Court reversed an appellate court's reduction of a trial court's awards for pain and suffering. The Louisiana Supreme Court explained that:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
With regard to appellate review of the much discretion of the trier of fact in the award of general damages ... we stated... in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 132 (1967):
`The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the trial court ...'
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La.Civ.C. art. (1999) in the award of damages....
absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979).

Reck, supra at 501.
DOTD urges us to reverse the trial court's awards for pain and suffering because of lack of testimony "that the deceased consciously suffered any pre-death pain ..." This argument is not res nova to our law. In Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979), the Louisiana Supreme Court reversed an appellate court's reversal of a trial court's award to a widow of $50,000 for the pain and suffering of her husband prior to his death. The appellate court had reasoned that "there was no evidence introduced to prove that Cheatham ever regained consciousness after he was shot". The Louisiana Supreme Court held that:
It is true that no evidence was presented which showed that the deceased regained consciousness from a point in time very shortly after he was shot. But that finding does not preclude an award for Mr. Cheatham's pain and suffering.... Minimally, the deceased did experience some physical and mental pain, suffering, embarrassment and mental consternation, however short lived.

*106 In accordance with our findings above, we believe that it was within the discretion of the jury to award plaintiff damages for her husband's pain and suffering...
After reviewing the facts and circumstances of the instant case, we cannot say that the trial court's awards to Herbert's widow and three minor children for Herbert's pain and suffering represent an abuse of the trial court's much discretion. We will not upset these awards on appeal.
DOTD's last argument is that the trial court erred in making separate awards for loss of consortium and loss of support, citing Finley v. Bass, 478 So.2d 608 (La. App. 2d Cir.1985).
Finley involved a suit for personal injuries and related damages arising from a collision between a car and a school bus. As an initial observation we note that the awards in Finley (to Mr. Finley $60,000 pain and suffering, $178,000 lost wages and lost earning capacity, and approximately $12,000 medical expenses; to Mrs. Finley $5,000 loss of consortium) were based on injuries and losses far less severe than those resulting in the death of Herbert and the resulting permanent deprivation to his widow and three minor children of his consortium and support.
DOTD apparently cites Finley because in that case Mr. and Mrs. Finley successfully urged the court to "break down" the concept of consortium into seven component parts. The fifth element which the Finley court discussed, as part of the concept of consortium was the right of support. The Finley court identified the right of support with the terms lost wages and earning potential. However, the Finley decision never purported to hold that it was definitively listing the items which loss of consortium would include.
The Finley court noted:
(Mr. and Mrs. Finley) urge that we break down the concept of "consortium" into seven component parts. We have done so, for lack of any other approach, ...
Further support for this conclusion is provided by our second circuit brethren's approval of awards for both loss of consortium and lost wages. Mims v. Reliance Ins. Co., 535 So.2d 1085 (La.App. 2d Cir. 1988). After reviewing the record in its entirety, we find this DOTD argument and assignment of error to lack merit.
We now address Brown's, Weston's and Wiles' answers to DOTD's appeal. The answers urge us to reverse the trial court's findings of General Motors' 40% fault, Wiles' 10% fault, and DOTD's 50% fault and assess DOTD's fault at 100%.
In finding General Motors 40% at fault the trial court explained:
The fault of General Motors was clearly established by the deposition testimony of Mr. John Noetti. The Blazer was defectively designed and manufactured. It's design, which included a high center of gravity, made it extremely susceptible to going out of control and rolling over. It did not provide sufficient occupant protection in a roll-over. Mr. Herbert was killed and Ms. Brown was injured as a direct result of the defective design and manufacture of the Blazer.
The trial court's findings regarding General Motors' fault were based on its acceptance of the expert witness deposition testimony of John Noetti. After reviewing the record in its entirety, we find the trial court's faith in the credibility of this expert testimony neither unreasonable nor manifestly erroneous, and thus we will not upset the trial court's findings.
Lastly, regarding the trial court's finding of Wiles' 10% fault, we note the trial court's explanation for this finding, towit:
Mr. Wiles' negligence contributed to the accident. Once he drove onto the shoulder, he did not allow the Blazer to decelerate sufficiently to safely re-enter the highway. Coleman v. State, through DOTD, 524 So.2d 1281, 1286 (3 Cir.1988); Pitre v. Aetna Ins. Co., 456 So.2d 626, 629 (La.1984).
In Coleman, supra, relying on numerous precedents including Pitre, supra, we reversed a trial court's finding of a motorist to be without fault after she attempted to *107 re-enter a highway from a shoulder 1¼ to 4 inches lower than the highway, because she was not "travelling at an advisable speed when attempting to re-enter the roadway".
In Pitre, supra at 629, the Louisiana Supreme Court held that:
Prudent behavior for a motorist who inadvertently drives off the paved roadway onto the shoulder is first to reduce speed and then to attempt a gradual reentry after he has regained control of the vehicle.
After reviewing the record in its entirety, we find that the trial court's findings regarding the percentages of fault are not manifestly erroneous, and thus we will not upset them on appeal.
For the foregoing reasons, the judgment of the trial court is affirmed at DOTD's cost.
AFFIRMED.
NOTES
[*] Judge John A. Patin, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.