JjDREW, J.
The parties having stipulated’ to liability and insurance coverage, the primary trial issue was quantum. Floyd Taylor and his wife, Doris, sued for their damages arising out of a rear-end collision which occurred while they were stopped at an intersection. The driver of the other car, George Armstrong and his insurer, Republic Vanguard Insurance Company (defendants), appealed complaining that the trial court awarded excessive damages. For the following reasons, the judgment is amended and affirmed.
Finding Mrs. Taylor’s injury (a cervical sprain and a left shoulder sprain which had resolved) to be a two-month injury, the trial court set the general damage award at $3,500 for the first month and $3,000 for the second month. The trial court found Mr. Taylor’s injury (thoracic sprain, a left shoulder sprain and right knee contusion) to be more severe because his knee injury affected his work as a carpenter which required bending, squatting, walking and standing. The trial court awarded Floyd Taylor $4,500 for the first month, $4,000 for the second month and $1,800 for lost wages. The trial court also awarded medical treatment of $1,982 for Doris Taylor and $2,177 for Floyd Taylor. Expert witness fees were set at $500 for Dr. Gurwara and $300 for Charles Jackson.
DISCUSSION

General Damages

The awards for medical and physical therapy costs are not at issue, but the defendants asserted that the awards for general damages are excessive and should be reduced. In Cole v. Pool, 34,329 (La. App.2d Cir.12/6/2000), 774 So.2d 1081, an action before the same trial judge for | ¡.damages arising out of an auto accident, this court explained:
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment or other losses of lifestyle which cannot be measured 'exactly in monetary terms.' In the determination of general damages, the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. La. C.C. art. 2324.1. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. The primary considerations in the assessment of damages are the severity and duration of the injured party’s pain and suffering.
Only after an abuse of discretion is disclosed by an articulated analysis of the facts is an examination of prior awards in similar cases proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded.' The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence, most favorable to the plaintiff, which reasonably could have been made by the trier of fact.
Cole, supra at p. 1083. (Citations omitted.)
In argument to the trial court, defense counsel acknowledged that Mrs. Taylor sustained “the most of two months soft tissue injury” and in brief argued that her *456 $6,500 general damages award should be reduced to $4,500, the maximum reasonable award. A teacher’s aide, Mrs. Taylor testified that prior to this April 17, 2000, accident, she was in good health with no physical restrictions. At the time of the crash, Mrs. Taylor stated she had a headache. Thereafter, she developed sharp pain in her neck which went down her shoulder and arm to the elbow. She characterized the pain as moderate. She took Tylenol for discomfort and switched to Advil on the doctor’s instructions. For approximately three weeks, her injuries limited|3her ability to do house and yard work, which activities made the pain worse. Physical therapy resulted in throbbing pain in her shoulder and neck. Significantly improved when she was discharged from physical therapy on May 24, 2000, her pain continued for approximately two weeks thereafter.
Her treating physician, a neurologist, Dr. Dharam P. Gurwara testified that he saw Doris Taylor on April 26, 2000, following the motor vehicle accident on April 17, 2000. She had pain on the left side of her neck which radiated down her left shoulder and arm. His examination revealed neck muscle spasms, and tenderness in the cervical spine and left shoulder. The doctor diagnosed cervical and left shoulder sprain. The treatment was two over-the-counter Advil four times a day and physical therapy. At her return visit on August 2, 2000 to be discharged, Mrs. Taylor, in response to the doctor’s inquiry, reported no pain. The doctor’s bill for her treatment was $520.
Accepted as an expert in physical therapy, Charles E. Jackson (PT) testified that Mrs. Taylor’s first visit was April 24, 2000 and that she was referred by Dr. Gur-wara.[1] The PT determined she had a mild strain of the cervical spine with intermittent symptoms which were worse early in the day. Mrs. Taylor had a course of ten treatments two to three times a week consisting of ultrasound, electromagnetic therapy, moist heat, mechanical cervical traction in the middle of her treatment course and supervised exercise near the end of treatment. The PT recommended that she avoid | repetitive lifting and retrieving things above shoulder height. Mrs. Taylor was discharged from therapy on May 25, 2000. Although she still had intermittent pain, the PT determined she was capable of managing her symptoms independently. Mrs. Taylor’s bill for physical therapy was $1,462.00 for the ten treatments.
The $6,500.00 general damages award is not supported by this record and is unreasonably excessive under the facts of the case. There is no indication that Mrs. Taylor missed any work as a result of her injuries. While inconvenienced for several weeks with discomfort she described as moderate, her pain had largely resolved after one visit to her physician and ten therapy sessions. All her discomfort concluded within two weeks of her May 24, 2000 discharge from therapy.
In Cole, supra, the plaintiffs award of $6,000 for a six-week soft tissue injury was reduced to $4,500. In Davis v. Wal-Mart Stores, Inc., 31,542 (La.App.2d Cir.1/22/99), 726 So.2d 1101, another general damages award by this trial judge was reduced as excessive. Following a fall, a chiropractor Davis was treated by for three months during which she continued to work and after which her injuries were healed. This court reduced the general *457 damages from $7,500 to $4,500, the highest amount that could have been awarded under the facts of the case. Therefore, the general damages of $6,500 awarded to Mrs. Taylor is reduced to $4,500, the highest reasonable award on the facts of this case.
We find the $8,500 general damages award to Mr. Taylor, while generous, was reasonable based upon the evidence in the record. Testifying |Rhe had no physical restrictions prior to the collision, Mr. Taylor stated his pain in his shoulder, neck and knee commenced the day following the accident. Stating he was not free from pain when discharged from physical therapy on May 24, Mr. Taylor testified at trial he still had upper back pain from time to time if he sat too long. Discomfort occurred at least twice a week and lasted thirty minutes to one hour. While his knee no longer hurt at trial, his upper back and shoulder pain continued. Although the answers to interrogatories stated plaintiffs had recovered from their injuries, Mr. Taylor said he told his attorney he still had some pain.
According to Dr. Gurwara, Mr. Taylor stated he was jerked in the collision and his right knee struck the dashboard. His complaint was pain in the left shoulder, upper thoracic area and right knee. Dr. Gurwara’s April 26, 2000 examination revealed sprains of the upper thoracic spine and left shoulder along with a contusion to the right knee. Although not documented in his report, the doctor testified Mr. Taylor’s knee was red. Even if Mr. Taylor took Advil as prescribed, Dr. Gurwara did not think Mr. Taylor could work as a carpenter at the time of the initial visit. The doctor opined that two to three weeks missed work as a carpenter would be reasonable. As with Mrs. Taylor, • Dr. Gur-wara prescribed two Advil four times a day along with physical therapy three times a week. At Mr. Taylor’s next visit on August 2, 2000 when he was discharged from treatment, Mr. Taylor reported no thoracic, shoulder or knee pain and the examination revealed no tenderness or spasms. Although Mr. Taylor had no complaints at the August visit, the doctor stated he did not know when Mr. Taylor’s | (¡complaints stopped. Mr. Taylor’s bill was $520 for medical treatment. The charge for court testimony was $500.
Concerning Mr. Taylor, the PT testified he suffered immediate pain in his neck and right knee. Not taking pain medication at the initial visit, Mr. Taylor stated his neck pain was worse in the morning while his knee pain increased during the day with prolonged walking or standing. Since he worked as a carpenter, the PT opined that Mr. Taylor’s occupation involved activities that would aggravate his injury. The PT ordered a course of treatment for the neck injury. For the knee contusion, the treatment was ice, interferential stimulation and exercise. Mr. Taylor received therapy ten times after the initial evaluation for a cost of $1,657.00. At discharge from therapy on May 24, 2000, he had minimal neck pain and no indication of knee pain. The PT testified that while Mr. Taylor’s symptoms were not completely abolished, there was significant improvement although Mr. Taylor was not pain free at discharge. The PT’s court fee was $300.
Mr. Taylor’s injuries while not serious were extensive enough to result in his missing three weeks work as a carpenter due to pain. Like his wife, he sought conservative treatment over the course of a month. Though improved by treatment and, undoubtedly, the passage of time, Mr. Taylor continued to have symptoms at the trial almost two years following the collision. Based upon the extent and duration of the injuries and viewing the evidence in the light most favorable to Mr. Taylor, we *458 cannot say that the trial court abused its discretion in awarding $8,500 in general damages.
┴7Losi Wages
On appeal, the defendants argued that a factual dispute was how much time Mr. Taylor missed from work. The PT testified it was his assumption and understanding that Mr. Taylor was working on the day of the initial evaluation and he recalled no subsequent discussion about the patient’s employment. The PT’s report indicated the PT would instruct Mr. Taylor in ergonomics and proper body mechanics to allow him to continue employment.
In contrary testimony, Mr. Taylor stated that between the accident and seeking medical assistance, he tried to work for two days but his knee and arm pain prevented it. He testified he missed three weeks work for which he was not paid. Mr. Taylor attested he informed the PT he had tried unsuccessfully to work and further, the PT did not give him instruction on proper body mechanics so he could continue to work.
Corroborating Mr. Taylor’s testimony was that of Amos Hines, a commercial and residential building contractor, who stated he had employed Mr. Taylor as a lead carpenter off and on for six or seven years. In April 2000, Mr. Taylor was employed at the rate of $15.00 an hour per 40-hour week, a sum of $600.00. According to Hines, Mr. Taylor missed three weeks work due to the injuries sustained in the accident. On cross-examination, Hines stated that he paid Mr. Taylor in cash and issued a form 1099 to him for the year 2000, so Mr. Taylor could pay his own taxes.
Mr. Taylor acknowledged at trial that both the original and amended answers to interrogatories stated his lost wages to be $600. Based on | ¡¡plaintiffs’ answers to interrogatories, defense counsel objected to Hines’ testimony and introduction of Hines’ written statement that Mr. Taylor was employed at $15 per hour for 40 hours per week and he missed three weeks work due to the accident. When defense counsel acknowledged having received a copy of Hines’ written statement before trial, the trial court overruled the objection and admitted, the evidence. The defendants also placed into evidence Mr. Taylor’s 2000 income tax return which included no income from Amos Hines, even though he and Hines testified that he was employed there in 2000 and missed approximately three weeks work.
Although defendants did not specifically cite La. C.C.P. art. 1428(2), the objection essentially was based upon the plaintiffs’ failure to amend their answers to interrogatories that Mr. Taylor lost $600 in wages. In Bozeman v. State, ex rel. DOTD, 34,430 (La.App.2d Cir.4/4/01), 787 So.2d 357, writ denied, 2001-1341 (La.6/29/01), 794 So.2d 813, this court noted that the trial court generally has great discretion to determine whether to admit testimony after a party objects on the ground that his opponent failed to fulfill the statutory mandate of La. C.C.P. art. 1428[2] to supplement discovery requests. In this matter, the rec *459 ord reveals that before overruling the objection, the trial court determined that the defendants had been provided before trial a copy of the employer’s statement that Mr. Taylor made approximately $600 per week and missed three weeks work. We find |flno abuse of discretion in the trial court’s admission of the testimony and evidence, the substance of which had been provided to defendants before trial. Further, we find no abuse of the trial court’s great discretion in concluding that Mr. Taylor missed three weeks work due to his injuries.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to reduce the general damages awarded to Mrs. Doris Taylor from $6,500 to $4,500. In all other respects, the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.

. The Taylors' first physical therapy was April 24, 2000 while their first visit with Dr. Gur-wara was April 26, 2000. The physical therapist testified it was legal and permissible to do an initial evaluation without doctor's orders; further, a physical therapist can give up to six treatments on doctor's verbal orders.

. La. C.C.P. art. 1428(2) provides: A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows: ...
(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which he knows that the response was incorrect when made, or he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.