759 So.2d 1026 (2000)
Lorene TERRELL, et al., Plaintiffs-Appellants,
v.
Anil NANDA, M.D., et al., Defendants-Appellees.
No. 33,242-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*1027 Kenneth R. Antee, Jr., Shreveport, Counsel for Appellants.
Richard Ieyoub, Attorney General, James R. Dawson, Assistant Attorney General, Counsel for Appellees.
Before WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, J.
The issue presented in this appeal is whether plaintiffs in a medical malpractice action may collect as special damages the amount of medical expenses contractually written off by the healthcare provider pursuant to its contract with the Medicaid program, a joint federal and state program which provides payment of medical expenses for indigent individuals. For the reasons discussed herein, we find, as did the trial court, that medical expenses contractually written off pursuant to the Medicaid program requirements are not damages recoverable by the plaintiffs.

FACTS
Vernon Taylor suffered a ruptured disc during an automobile accident. On October 26, 1994, Mr. Taylor underwent an anterior cervical diskectomy and fusion at the C3-C4 level. The surgery was performed at the Louisiana State University Medical Center ("LSUMC") in Shreveport. After the surgery, Mr. Taylor began to experience numbness and difficulty moving his lower extremities. An emergency surgery involving an anterior cervical fusion with a bone graft was performed to correct these problems. The procedure was unsuccessful, and Mr. Taylor's condition deteriorated to quadriplegia. As a result of the quadriplegia, Mr. Taylor developed pulmonary and respiratory complications necessitating the installation of a pacemaker. He also became ventilator dependent. Mr. Taylor was treated at LSUMC until January 1995, at which time he was transferred to LifeCare Hospital ("LifeCare"), as a Medicaid patient, for long term rehabilitation treatment. He remained at Life-Care until his death on May 22, 1995.
Mr. Taylor's family, the plaintiffs herein, filed suit for damages against LSUMC and Mr. Taylor's treating physicians, Dr. Anil Nanda and Dr. Henry Zizzi, alleging medical malpractice. The claims against Drs. Nanda and Zizzi were later dismissed on an exception of prematurity. The Medical Review Panel determined that LSUMC breached the applicable standard of care, particularly in failing to conduct or record neurological checks from the end of the first surgery until more than three hours later. Thereafter, the plaintiffs and *1028 LSUMC reached a partial settlement for $630,000. This settlement did not pertain to the plaintiffs' claim for medical expenses contractually written off by LifeCare pursuant to Medicaid requirements. This issue was submitted to the trial court for resolution on the basis of the parties' stipulations and exhibits offered into evidence.
The evidence showed that Mr. Taylor's medical expenses at LifeCare totaled $1,110,922.82 and that Medicaid paid Life-Care $164,084.82. The difference of $946,838 was contractually written off by LifeCare as required by Medicaid. Because LifeCare accepted Mr. Taylor as a Medicaid patient, LifeCare was required by both federal and state law to accept the Medicaid payment as payment in full and was prohibited from collecting further payment from Mr. Taylor. See 42 U.S.C. § 1396; 42 C.F.R. § 447.15. The evidence also showed that upon applying for Medicaid, Mr. Taylor and his family were informed that they would not be charged for Mr. Taylor's treatment and would incur no liability for his medical expenses.
The plaintiffs relied upon the collateral source rule as support for their claim that the contractually adjusted medical expenses are an item of damages to which they are entitled. The plaintiffs also filed a motion in limine to exclude any evidence of Medicaid payments. LSUMC contended that the right to recover the contractually adjusted medical expenses is preempted by federal law governing the Medicaid program and that allowing recovery of these expenses as damages would be a violation of the Supremacy Clause of the Unites States Constitution. Additionally, it was LSUMC's position that the State of Louisiana procured the Medicaid payments and provider agreement from which Mr. Taylor benefitted, as such the collateral source rule did not apply. Allowing recovery of the contractually adjusted expenses would, according to LSUMC, result in a windfall to the plaintiffs at the expense of taxpayers. Finally, LSUMC filed an exception of no right of action alleging that by applying for Medicaid, Mr. Taylor assigned the rights to reimbursement or repayment of medical bills from any third party to Medicaid.
The trial court denied the plaintiffs' motion in limine and claim for recovery of the contractually adjusted medical expenses in the amount of $946,838. In denying the plaintiffs' claim, the trial court referred to the following statement from Gordon v. Forsyth County Hospital Authority, Inc., 409 F.Supp. 708 (M.D.N.C. 1975), affirmed in part and vacated in part, 544 F.2d 748 (4th Cir.1976):
It would be unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages for medical expenses from a tortfeasor and pocket the windfall.
The plaintiffs now appeal this adverse judgment.

DISCUSSION
The plaintiffs contend that the trial court erred in denying recovery of the contractually adjusted medical expenses and that this error is in contravention of well-established Louisiana law applying the collateral source rule to medical expenses contractually adjusted as required by the Medicaid/Medicare laws. The plaintiffs assert that, through application of the "collateral source" rule, they are entitled to an award of $946,838, the amount of medical expenses incurred by Mr. Taylor in the course of his treatment at LifeCare.
Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiffs tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. Cooper v. Borden, 30,292 (La.App.2d Cir.2/25/98), 709 So.2d 878; Williamson v. St. Francis Medical Center, Inc., 559 So.2d 929 (La.App. 2d Cir.1990). By application of the collateral source rule, courts have held that a plaintiffs recovery cannot by diminished by amounts paid by Medicare. Cooper v. Borden, supra; Williamson *1029 v. St. Francis Medical Center, Inc., supra; Weir v. Gasper, 459 So.2d 655 (La.App. 4th Cir.1984), writ denied, 462 So.2d 650 (La.1985); Womack v. Travelers Ins. Co., 258 So.2d 562 (La.App. 1st Cir. 1972), writ denied, 261 La. 774, 260 So.2d 701 (1972). For other applications of the collateral source rule see Bryant v. New Orleans Public Service, Inc., 406 So.2d 767, 768 (La.App. 4th Cir.1981), writ granted, 410 So.2d 761 (La.1982), affirmed, 414 So.2d 322 (La.1982). While our courts have applied the collateral source rule to allow recovery of amounts paid by a variety of sources, our courts have not squarely addressed the issue presented here, namely, whether a plaintiff may recover as damages those medical expenses contractually adjusted or written off pursuant to the requirements of the Medicaid program.
The plaintiffs cite Brannon v. Shelter Mutual Ins. Co., 520 So.2d 984 (La.App. 3rd Cir.1987) as support for their assertion that the collateral source rule allows recovery of medical expenses contractually adjusted as per the Medicaid guideline requirements. In Brannon, supra, the plaintiff, Mrs. Brannon, was billed $135,929.32 for medical treatment. Insurance maintained by Mrs. Brannon through her employer paid a portion of her medical expenses for treatment at Our Lady of Lourdes Hospital, and the hospital opted to take the remaining balance owed as a "contractual adjustment" in accordance with its policy under the Medicaid program requirements. Evidence established that although Mrs. Brannon would have been eligible for Medicaid benefits, the Medicaid program was not billed for Mrs. Brannon's expenses and did not pay. Medicaid was not used to satisfy Mrs. Brannon's obligation to the hospital since the amount paid by her insurer to the hospital equaled or exceeded the amount which Medicaid would have paid. Applying the collateral source rule, the court allowed recovery of the full amount of medical expenses, including the amount contractually adjusted by the hospital. The court gave two reasons for its decision. First, the court did not believe the defendant should be allowed to benefit from a policy intended to provide medical treatment for those in need. Second, even though a portion of the medical expenses was contractually adjusted and no longer owed, the court believed that a natural obligation remained.
While at first glance Brannon, supra, does appear to support the plaintiffs' claim, closer examination reveals distinguishing features. Mrs. Brannon was billed the full amount of her medical expenses. In the instant case, neither Mr. Taylor nor the plaintiffs was billed any amount. In fact, the plaintiffs knew that Mr. Taylor would incur no expenses or liability for his treatment at LifeCare. Although Mrs. Brannon was eligible for Medicaid, her medical expenses were not covered by the Medicaid program. Mrs. Brannon's expenses were paid by private insurance which she obtained through her employer. The hospital then "contractually adjusted" the balance owed by Mrs. Brannon in accordance with its policy when dealing with Medicaid patients. In the instant case, no private insurer satisfied Mr. Taylor's medical expenses. Mr. Taylor was accepted for treatment by Life-Care as a Medicaid patient. By law, Life-Care was required to accept the Medicaid payment as payment in full satisfaction of Mr. Taylor's expenses and was prohibited from seeking further payment from Mr. Taylor. See 42 U.S.C. § 1396a; 42 C.F.R. § 447.15; 42 C.F.R. § 447.20; and La. R.S. 46:446.5. These distinctions clearly differentiate Brannon, supra, which involves a hospital "writing off" the remaining balance after obtaining payment from a private insurer, from the instant case which involves Medicaid payment in full satisfaction of the expenses incurred by the patient.
As a final distinction, no natural obligation exists in this instance. A natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance. La. C.C. art. 1760. Natural obligations are not enforceable *1030 by judicial action. La. C.C. art. 1761. Obligations extinguished by prescription or discharged in bankruptcy are examples of circumstances which may give rise to a natural obligation. La. C.C. art. 1762. In order for a duty to be considered a natural obligation, the following requirements must be present:
(1) The moral duty must be felt towards a particular person, not all person in general.
(2) The person involved feels so strongly about the moral duty that he truly feels he owes a debt.
(3) The duty can be fulfilled through rendering a performance whose object is of pecuniary value.
(4) A recognition of the obligation by the obligor must occur, either by performing the obligation or by promising to perform. This recognition brings the natural obligation into existence and makes it a civil obligation.
Litvinoff, The Law of Obligations § 2.4, 5 Louisiana Civil Law Treatise (1992), as cited in Thomas v. Bryant, 25,855 (La. App.2d Cir.6/22/94), 639 So.2d 378.
In this instance, there was never any obligation on the part of Mr. Taylor or any representative of Mr. Taylor to satisfy the medical expenses incurred at LifeCare. Mr. Taylor entered LifeCare as Medicaid patient fully aware that he would incur no liability for the expenses. Stipulations of fact entered into evidence show that Mr. Taylor and his family received information regarding his rights and responsibilities under the Medicaid program. They were informed that as a Medicaid patient, Mr. Taylor would have no responsibility for the bill and that LifeCare could not charge Mr. Taylor or his family for any amount not paid by Medicaid. Also, LifeCare knew that, as a Medicaid provider, it would receive payment from Medicaid for Mr. Taylor's expenses and that it was prohibited from billing or accepting payment from Mr. Taylor. Under these circumstance the requirements for giving rise to a natural obligation are not met, and no natural obligation exists.
As is evident from our discussion of Brannon, supra, we do not find it supportive of the plaintiffs' claim; nor do we find direct support for the plaintiffs' claim in other cases of a similar nature. In Williamson v. St. Francis Medical Center, Inc., supra, the plaintiff sought to recover as medical expenses that portion of a hospital bill contractually adjusted by the hospital after obtaining payment from the Medicare program. Recovery was not allowed since the tortfeasor was the hospital which had contractually adjusted the amount. As such, this Medicare case did not directly address the issue before us now. In Killough v. Bituminous Cas. Corp., 28,329 (La.App.2d Cir.5/8/96), 674 So.2d 1091, the defendants filed a motion for a new trial in which they alleged the award of past medical expenses should be reduced. The award by the trial court included the amounts in excess of the payments made by Medicaid/Medicare. The trial court denied the motion for a new trial, and this court found no abuse of discretion on the part of the trial court. In reaching this decision, we did not address the issue of whether expenses contractually adjusted pursuant to Medicaid requirements are recoverable as damages. Similarly, the resolution of whether contractually adjusted amounts under the Medicare program are recoverable as damages was avoided in Kozina v. Zeagler, 94-413 (La.App. 5th Cir. 11/29/94), 646 So.2d 1217. The parties in Kozina chose to compromise their claim, and the settlement contract which provided for the payment of the difference between the total medical expenses and the portion paid by Medicare became the law between the parties.
The issue before us in this matter is res nova. Our review of the record and jurisprudence leads us to conclude that the collateral source rule does not allow for recovery of expenses in excess of the Medicaid payments. A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of *1031 injury. Whitthorne v. Food Lion, Inc., 30,105 (La.App.2d Cir.1/21/98), 706 So.2d 193, rehearing denied; Maynor v. Vosburg, 25,922 (La.App.2d Cir.11/28/94), 648 So.2d 411, rehearing denied, writ denied, 95-0409 (La.4/28/95), 653 So.2d 590. The term "incur" is defined as "to become liable for." Webster's College Dictionary, 682 (Random House 1991); Webster's Ninth New Collegiate Dictionary, 611 (Merriam-Webster, Inc.1984). As a Medicaid patient, the medical expenses incurred by Mr. Taylor were those paid by Medicaid. There was no liability on the part of Mr. Taylor and there is no liability on the part of the plaintiffs for expenses above those paid by Medicaid. As stated previously, the Medicaid payment to Life-Care was payment in full for Mr. Taylor's expenses. Application of the collateral source rule would generally allow for recovery from the tortfeasor of those medical expenses paid by Medicaid.[1] Otherwise, the tortfeasor would receive a windfall due to benefits received by the plaintiff from the contribution or procuration of other sources.
Gordon v. Forsyth County Hospital Authority, Inc., supra, referred to by the trial court in its decision addressed, in part, whether a hospital which provided free care to a patient under the Hill-Burton Act could assert a lien against damages recovered by the patient in a tort suit. While this issue is unrelated to the issue before us, we believe that the reasoning expressed in Gordon, supra, for allowing the hospital to assert a lien against the plaintiff's recovery and relied upon by the trial court in denying the plaintiffs' claim in this instance is sound and applicable to our resolution in favor of LSUMC. As expressed in Gordon, supra, a plaintiff may not be compensated for damages which he has not suffered. Therefore, a recipient of free medical care provided at the expense of taxpayers should not be allowed to recover damages from the tortfeasor and pocket the windfall.
Our determination that the plaintiffs may not recover as damages the amounts "written-off" or "contractually adjusted" by LifeCare pursuant to the Medicaid requirements is further supported by McAmis v. Wallace, 980 F.Supp. 181 (W.D.Va.1997), which addressed the identical issue presented here. The McAmiscourt concluded that the collateral source rule did not require the plaintiff to receive compensation for expenses incurred neither by the plaintiff nor by Medicaid. After examining the Medicaid scheme, the court found that the written-off amount was not an expense incurred by either Medicaid or the plaintiff. The plaintiff had no legal obligation to pay the "written-off" amount and would not be permitted to recover the "written-off" amount absent personal liability. If allowed to recover the claimed damages, the plaintiff would "reap a windfall recovery at the expense of the taxpayers who made her Medicaid benefits possible." McAmis, 980 F.Supp. at 185.
Based on the foregoing discussion, we now hold that a plaintiff may not recover as damages that portion of medical expenses "contractually adjusted" or "written-off" by a healthcare provider pursuant to the requirements of the Medicaid program. Such expenses are not damages incurred by the injured plaintiff and are not subject to recovery by application of the "collateral source" rule. We find no error in the trial court's denial of the plaintiffs' claim.

*1032 CONCLUSION
We affirm the trial court's judgment at plaintiffs'/appellants' cost.
AFFIRMED.
NOTES
[1] According to 42 U.S.C. § 1396a(a)(25), the state plan for administration of the Medicaid program must require the state agency administering the program to "take all reasonable measures to ascertain the legal liability of third parties" to pay for medical services received by Medicaid patients and to seek reimbursement for medical assistance provided by the state to the extent of such liability. Furthermore, in applying for Medicaid, Mr. Taylor assigned the right of reimbursement for medical expenses to the state agency administering the Medicaid program. Any recovery of the medical expenses paid by Medicaid would therefore reimburse the Medicaid program.