h STEWART, J.
This matter involves two related appeals which have been consolidated.[1] The first is an appeal by Linda Bozeman, the plaintiff, whose claim for medical expenses stemming from the death of her husband was remanded for retrial in Bozeman v. State-DOTD, 34,430 (La.App.2d Cir.4/4/01), 787 So.2d 357, writ denied, 2001-1341 (La.6/29/01), 794 So.2d 813. On remand, the trial court reduced the award of medical expenses by applying Terrell v. Nanda, 33,242 (La.App.2d Cir.5/10/00), 759 So.2d 1026, which holds that the amounts “written-off’ or “contractually adjusted” pursuant to the requirements of the Medicaid program are not recoverable as damages. On appeal, the plaintiff challenges the application of the Terrell holding and the amount of medical expenses awarded by the trial court.
*962 The second appeal is by the Department of Health and Hospitals (“DHH”), which appeals the denial of its motion to withdraw funds from the registry of the court. DHH filed this motion to recover medical expenses paid by Medicaid on behalf of the plaintiffs late husband, Tommy Bozeman.
For the reasons to be explained, we amend the trial court’s judgment as to the award of medical expenses, and we affirm the judgment denying DHH’s motion.
FACTS
This matter arises from a single car automobile accident on May 12, 1993, which resulted in the injury and subsequent death of Tommy 1 ¡.Bozeman. Specific facts of the accident are set forth in Bozeman v. State-DOTD, supra. Tommy Bozeman’s medical care was largely paid for by Medicaid, a federal and state funded program which provides payment for medical care for eligible individuals qualifying for public assistance. 42 U.S.C. § 1396; La. R.S. 46:151 and La. R.S. 46:153. Linda Bozeman, individually and on behalf of Tommy, sued the State/DOTD (hereinafter “DOTD”). The trial court found DOTD liable for damages due to an unreasonably dangerous condition of the shoulder of the highway where the accident occurred and assessed seventy-five percent of the fault to DOTD. Tommy Bozeman was assessed with twenty-five percent of the fault for the accident. In Bozeman, supra, this court affirmed the trial court’s judgment except as to the award of medical expenses, which had been appealed by DOTD. The trial court had awarded Boze-man $613,626.64 in medical expenses.
DOTD argued on appeal that the trial court erred in failing to give a credit for medical expenses paid by Medicaid. In its answer to the plaintiffs petition, DOTD alluded to Medicaid payments by alleging that the State would “pay for the injuries sustained by the said Tommy Bozeman in one way or another for the rest of his natural life.” The award of medical expenses was based on a joint exhibit, J-l, introduced by the parties. J-l consisted of a 93-page Medicaid printout of 592 itemized claims from medical providers. The printout purported to show the claims approved, denied, and paid by Medicaid on behalf of Tommy Bozeman. Copies of invoices were also introduced by the plaintiffs, but some of these were | ^duplicates of claims included on J-l. At trial, the parties also referred to a settlement with Chrysler, a defendant in a companion suit stemming from the same accident. The separate suits had not been consolidated. There was also reference to a lien by DHH in the Chrysler suit for recovery of Medicaid expenses. However, the Chrysler suit had not been made part of the record in Bozeman’s suit against DOTD.
In reviewing the trial court’s award of special damages, this court could not reconstruct the individual expense charges listed in the trial court’s reasons for judgment from the evidence in the record. Moreover, the trial court’s denial of DOTD’s request for a credit for Medicaid payments occurred before the Terrell decision, which addressed the effect of Medicaid payments on awards for medical expenses. Although DOTD had failed to consider the implication of the Terrell decision on appeal from the award of medical expenses, this court concluded that DOTD’s assignment of error pertained to the effect of J-l on the award of medical expenses and that the introduction of J-l expanded the pleadings to include the issue of offset pertaining to Medicaid payments. The court then remanded the matter for retrial of the medical expenses issue to allow the trial court to “fix the amount of special damages for medical expenses in view of the Terrell opinion and to the extent that that ruling may be applicable.” Bozeman, 787 So.2d at 369. The *963 plaintiff applied for a rehearing, but rehearing was denied. The plaintiff did not seek review of the ruling on special damages before the supreme court.
14Retrial of the special damages for medical expenses occurred on February 18, 2002. Plaintiff introduced a summary spreadsheet of medical expenses compiled from the original 1996 Medicaid printout (J — 1 at trial), an updated 2001 printout of Medicaid claims, and original invoices which were introduced into evidence at trial. DOTD introduced the 2001 printout. No testimony was entered by either party. The trial court rendered judgment on March 28, 2002, awarding medical expenses of $344,999.59. Written reasons for judgment were provided on May 14, 2002, in response to a motion by the plaintiff. The trial court explained its decision as follows:
The ruling of this court on March 28, 2002 involved a determination by this court as to what medical expenses should be awarded in favor of plaintiff. The Second Circuit Court of Appeal remanded this case for that purpose and directed a consideration of the Terrell criteria in making that calculation. Both parties submitted their calculations and as can readily be seen by the record, this court accepted the calculations and argument made by the defendant, which are adopted as though fully set forth herein.
Thereafter, the trial court denied the plaintiffs motion for a new trial, and this appeal followed.[2]
BOZEMAN APPEAL
The plaintiff asserts five assignments of error on appeal. The first and second assignments of error, which will be addressed together, pertain to whether the trial court erred in applying the Terrell holding to the award of medical expenses and whether DOTD met its burden of proof. The third and fourth assignments of error, which will be addressed together, pertain to whether the trial court erred in allowing evidence to be presented by DOTD | .¡concerning a defense not asserted at trial and in failing to find that plaintiff was prejudiced by the change in legal theory by DOTD after oral argument and on remand. The fifth assignment of error is whether the trial court erred in fixing the amount of medical expenses at $344,999.59.
We will address the third and fourth assignments of error first as these deal with whether the trial court should have gotten to a consideration of Terrell, supra, in assessing special damages. Thereafter, we will address the first and second assignments of error, which pertain to the application of Terrell, supra, to this matter. Lastly, we will address the fifth assignment of error pertaining to the calculation of damages.

Third and Fourth Assignments of Error:

The plaintiffs third assignment of error pertains to this court’s ruling in Bozeman, supra, that the
“joint exhibit clearly expanded the pleadings, defeating any assertion that the dictates of La. C.C.P. art. 861 were not followed by plaintiff, or that the State failed to raise any affirmative defense, such as offset, pertaining to the effect of the Medicaid payout.”
Bozeman, 787 So.2d at 369. The plaintiff argues that this ruling should not be considered as res judicata. Instead, the plaintiff contends that the law of the case doctrine should apply and that due to palpable error in the ruling, the trial court *964 should have made its own determination as to whether the pleadings had been expanded to encompass the application of Terrell, supra, to the award of medical expenses and concluded that they had not.
A judgment of the appellate court becomes final and definitive if neither an application for rehearing nor an application for writ of certiorari to the supreme court is timely filed. La. C.C.P. art. 2166; Buckbee v. AWECO, Inc., 87-1201 (La.App. 3d Cir.4/26/93), 626 So.2d 1190. If a timely application for rehearing is denied by the appellate court, a judgment becomes final unless application for writ of certiorari is timely filed in accordance with La. C.C.P. art. 2166. The plaintiff applied before this court for a rehearing on the issue of medical expenses following the decision in Bozeman, supra, but rehearing was denied. Thereafter, the plaintiff did not apply to the supreme court for a writ of review. DOTD did apply for a writ of certiorari as to other issues, but the writ was denied. The decision in Bozeman, supra, is a final and definitive judgment.
In addition, the “law of the case” doctrine recognizes the conclusive effects of appellate rulings at trial on remand and the rule that an appellate court will not reconsider its earlier ruling in the same case upon a second appeal absent palpable error or manifest injustice. Northeast Realty v. Jackson, 36,276 (La.App.2d Cir.8//14/02), 824 So.2d 1264. The doctrine applies to those parties who were involved in the litigation at the time of the prior decision and who have had their day in court. Coldwell Banker J. Wesley Dowling & Associates, Inc. v. City Bank and Trust of Shreveport, et al., 25,684 (La.App.2d Cir.3/30/94), 634 So.2d 959, Clomon v. Monroe City School Bd., 557 So.2d 1100 (La.App. 2d Cir.1990), affirmed, 572 So.2d 571 (La.1990). Policy considerations behind the “law of the case” doctrine include avoiding indefinite relitigation of the same issue, obtaining consistent results in the same case, fairness to the parties, and affording one opportunity for argument and decision on the same issue. Coldwell Banker, supra.
7 Our review of Bozeman, supra, reveals nothing directing the trial court to determine whether the pleadings had been expanded by the introduction of the joint exhibit to encompass the application of Terrell. This determination was made on the appellate level and partly formed the basis for the decision to remand for a retrial of special damages for medical expenses. The trial court was bound by the appellate ruling on this issue. Moreover, we find no basis for reconsideration of the same issue on appeal after the plaintiff presented the same arguments after the Bozeman decision in an application for rehearing, which was denied by this court, and was afforded the opportunity to seek review before the supreme court but did not do so. Accordingly, we find no merit in this assignment of error.
In the fourth assignment of error, the plaintiff argues that the trial court erred in failing to find she was prejudiced by DOTD’s change in legal theory after oral argument and on remand. The plaintiff argues that by relying on Terrell, supra, DOTD is seeking an additional form of relief and not merely changing the theory of its case. The plaintiff also argues that she was prejudiced because she stipulated to the introduction of J 1 without knowing that it would be used by DOTD to prove amounts written-off under the Medicaid program.
Plaintiff relies on T.L. James & Co. v. Kenner Landing, Inc., 562 So.2d 914 (La.1990), which limits relief which may be granted in accordance with La. C.C.P. art. 862, where a party fails to demand a particular form of relief in his pleadings and where his trial conduct is inconsistent with *965 such relief throughout the proceedings so as to improperly 18and substantially prejudice the other parties in preparing and asserting potential defenses.[3] We believe that plaintiffs reliance on this case is misplaced since she had the opportunity on retrial to prepare and assert any potential defenses to the application of Terrell in determining the award for medical expenses. Moreover, it was evident throughout the course of litigation in this matter that the effect of Medicaid payments on the medical expenses awarded would be an issue. DOTD had referred to payment by the State for the care of Tommy Bozeman in its petition, and DOTD had argued that the medical expenses should be offset by the Medicaid payments. We do not find that the plaintiff was prejudiced by stipulating to J-l since she also relied on J-l at trial and at retrial in building her claim for medical expenses. Finally, it was this court which determined that Terrell should be considered, and which remanded the matter for retrial of the medical expenses issue in light of the Terrell decision and because of inadequacies in the record which impeded review of the initial award. This was not an instance of DOTD simply changing its requested relief post trial. Accordingly, we find no error in the trial court’s failure to find that the plaintiff was prejudiced by any change in legal theory on the part of DOTD. No prejudice has been shown. We find no merit in this assignment of error.

First and Second Assignments of Error:

|aIn these two assignments of error, the plaintiff challenges the applicability of Terrell v. Nanda, supra, to the award of medical expenses and argues that DOTD did not meet the burden of proof required to apply the holding of Terrell. Our consideration of these assignments of error must begin with a review of the Terrell decision.
Terrell v. Nanda, supra, involved a medical malpractice action against LSUMC, the tortfeasor. The plaintiffs reached a partial settlement with LSUMC, but the settlement did not include the claim for medical expenses which had been written off under Medicaid by LifeCare Hospital, a long term rehabilitation treatment facility which had provided treatment for the injured party as a Medicaid patient until his death. At issue was whether that portion of medical expenses contractually written off pursuant to the mandates of the Medicaid program were recoverable as special damages. This court held that the portion of medical expenses “contractually adjusted” or “written-off’ pursuant to the requirements of the Medicaid program are not recoverable as damages, because such expenses are not incurred by the plaintiff and are not subject to recovery under the collateral source rule. The rationale behind this ruling was based on the federal and state requirements of the Medicaid program. First, the federal and state requirements of the Medicaid program impose no liability on the recipient, because the healthcare provider is required to accept Medicaid as payment in full for the medical services provided. See 42 U.S.C. § 1396a; 42 C.F.R. § 447.20; and La. R.S. 46:446.5. Second, because of the particular requirements of the Medicaid program, there was no natural obligation h (giving rise to a duty on the part of the Medicaid recipient to render performance by payment of the written-off expenses. Third, in the absence of any obligation or liability on the part of the recipient for payment of *966 medical expenses that are written-off pursuant to Medicaid requirements, such expenses were not incurred by the recipient and were not recoverable as special damages under the collateral source rule.
The same conclusion as in Terrell was reached by the Fourth Circuit in Suhor v. Lagasse, 2000-1628 (La.App. 4th Cir.9/13/00), 770 So.2d 422, with regard to expenses written-off under the Medicare program, a federally established health insurance program for people 65 and older and for many with disabilities. The Fourth Circuit held that medical expenses written-off under the Medicare program by operation of federal law are not recoverable as damages under the collateral source rule. The court concluded that the policy and goals, such as tort deterrence, accident prevention, and making the victim whole, behind the collateral source rule are not served by allowing recovery of the written-off amounts. Such amounts are not paid by anyone, as the debt is extinguished by operation of law when the healthcare provider elects to accept payment by Medicare. Id. The same applies to Medicaid.
As indicated in Suhor, supra, the goal of tort recovery, which is to make the victim whole, would not be served by allowing recovery of the non-existent debt. In the instant case, the plaintiff is made whole by recovering the amounts actually paid by Medicaid, which are the only expenses incurred by the recipient under the program. The plaintiff also Inrecovers any medical expenses that are denied or not covered by Medicaid. No windfall accrues to either the plaintiff or tortfeasor.
Plaintiff argues that recovery of the written-off amounts should be allowed because it is the healthcare provider, and not the tortfeasor, who writes off the medical expenses under Medicaid. As such, the tortfeasor pays less damages when the victim’s medical care is paid for by Medicaid rather than by a source such as private insurance. We reject this argument. Damages owed by a tortfeasor must be based on the particular factual situation at issue and not in comparison to what may be owed by some other tortfeasor in some other situation. One requirement of the Medicaid program, as provided by 42 C.F.R. § 447.15, is that participation in the Medicaid program is limited to “providers who accept, as payment in fall, the amounts paid by the agency plus any deductible, coinsurance, or co-payment required by the plan....” (Emphasis added.) State law requires participating healthcare providers to “comply fully with all federal and state laws and rules pertaining to the medical assistance programs.... ” La. R.S. 46:437.11(B). Under state law, providers are specifically required to accept Medicaid payment as payment in full and are prohibited from the billing or collecting additional amounts from the recipient or the recipient’s responsible party. La. R.S. 46:437.12(A)(10)(a). These provisions are cited to show that the healthcare provider is paid in full under Medicaid in accordance with the requirements of federal and state law. Although we refer to amounts being “written-off’ or “contractually adjusted,” Medicaid provides for full payment to healthcare providers under terms accepted by l12them through their participation in the program. Accordingly, the plaintiff recovers as special damages those medical expenses paid by Medicaid. Nothing more is owed.
The plaintiff makes a number of arguments suggesting that Terrell will impede efforts by DHH to recover expenses paid on behalf of Tommy Bozeman or reduce amounts that may be recovered. DHH is the state agency charged with administering the Medicaid program. See 42 U.S.C. § 1396a; 42 C.F.R. § 431.10; La. R.S. 46:151, and La. R.S. 46:153. Federal law requires DHH to take reasonable mea *967 sures to identify third parties who may be legally liable for payment of resources furnished by Medicaid and to pursue recovery from these parties. See 42 C.F.R. §§ 438.135, 433.136, 433.138. Moreover, federal and state law provide that by applying for and receiving Medicaid benefits, the recipient is deemed to have assigned to the Medicaid agency his rights to any payment of medical care or support due by a third party. See 42 C.F.R. §§ 433.145 and 433.146; La. R.S. 46:153(E).
In accordance the third party liability and assignment provisions, La. R.S. 42:446 provides DHH the mechanism for enforcing its recovery rights. DHH may seek recovery of expenses paid by either asserting its own cause of action or intervening in a suit on behalf of the Medicaid recipient against third persons or legal entities where there is some legal liability on their part for payment of damages or compensation. The statute also creates a privilege on behalf of DHH for medical expenses paid by Medicaid. La. R.S. 46:446(F). As will be discussed infra, DHH neither asserted its own cause of action nor filed an intervention in this suit. What DHH may | recover is not an issue to be determined at this time. Thus, those arguments pertaining to Terrell’s potential impact on DHH’s recovery are premature and not directly applicable to the issue to be determined in this matter. The only issue here is the applicability of the Terrell holding to determine what special damages for medical expenses are due to the plaintiff from the tortfeasor, DOTD.
As has been stated, Terrell holds that the expenses contractually adjusted or written-off pursuant to the requirements of the Medicaid program may not be recovered as special damages by the plaintiff. Here, the injured party’s medical expenses were paid by Medicaid. The trial court did not err in applying Terrell to determine the award of medical expenses.
Finally, we find no merit in the plaintiffs argument that DOTD failed to meet a burden of proof or satisfy a test for Terrell to apply. No such test is set forth in Terrell. Rather, the holding is based on the federal and state law requirements of the Medicaid program. Medicaid is a joint federal and state program which provides payment for medical care for qualifying individuals. 42 U.S.C. § 1396a; La. R.S. 46:151; La. R.S. 46:153. As has been discussed, participating healthcare providers are required to accept Medicaid payment as payment in full for services rendered and are prohibited from billing or collecting additional amounts from the recipient. That Tommy Bozeman was a recipient of Medicaid is not in dispute. Therefore, the federal and state laws applicable to Medicaid recipients apply here. The plaintiffs recovery, to the extent of those expenses paid by Medicaid, is subject to the holding of Terrell.
|uFor these reasons, we find no merit in these two assignments of error.

Fifth Assignment of Error:

The plaintiff argues that the trial court erred in fixing medical expenses at $344,999.59. The plaintiff argues that under Terrell, supra, she is entitled to the amounts paid by Medicaid as well as the amounts that were either denied or not considered by Medicaid. This is correct. Terrell excludes only those amounts written-off under the Medicaid program. The plaintiff argues that the trial court’s award did not include either the full amount of the claims denied by Medicaid or the full amount of claims actually paid by Medicaid.
In the written reasons for judgment, the trial court explained that the parties submitted their calculations and that the court accepted the calculations and arguments of the defendant. The defendant’s calculations are based on a 156 page printout of *968 claims submitted to Medicaid on behalf of Tommy Bozeman. The plaintiff also used this printout in compiling her own spreadsheet of medical expenses. The printout is from the Louisiana Medicaid Management Information Systems and covers the period from 03/12/1993 through 08/17/2001. The printout shows that 1093 claims were submitted to Medicaid in the amount of $622,086.89. Of the total claims, 830 claims were approved by Medicaid, which paid providers $319,838.46. The printout also shows that 263 claims were denied in the amount of $35,368.51. Using these figures, the amount written off under Medicaid and the amount which is not recoverable as damages is $266,879.92.[4]
J^The plaintiff argues that if the sums the 2001 printout shows paid are added, the total is greater than the total indicated on the printout. We disagree, as the total reached by our own calculations of the sums shown as paid on the printout approximated the total amount shown on the printout. Therefore, the amount of medical expenses paid by Medicaid and to be awarded to the plaintiff total $319,838.46.
Next, the plaintiff argues that the sum of those charges either not considered or denied by Medicaid total $60,238.74, rather than the sum of $35,368.51 shown on the printout as the total charges denied by Medicaid. The plaintiff argues that the defendant submitted the printout as evidence of the amounts due, but then attempted to impeach data in the printout by arguing that some charges were duplicates. The plaintiff contends that the printout speaks for itself and what appears in the printout is the best evidence of what was paid.
We agree that the printout speaks for itself and is the best indication of claims incurred, paid, and denied by Medicaid. The printout shows the total claims denied to be $35,368.51. Although various codes are assigned to each claim to designate the action taken on a particular claim, no evidence was introduced by either party to explain these codes. The best evidence of claims denied is the total provided on the Medicaid printout ($35,368.51).
|1fiIn the reasons for judgment, the trial court explained that it accepted the calculations of the defendant. DOTD suggested that the plaintiff was entitled to medical expenses in the amount of $344,999.59, this being the correct total of the amounts indicated as paid and denied on the 2001 Medicaid printout. Plaintiff argues that this figure is incorrect and that the correct total that should be awarded is $355,206.97. We conclude that the plaintiff is entitled to medical expenses in the amount of $355,206.97, this being the total of the claims paid by Medicaid ($319,-838.46) and the claims denied by Medicaid ($35,368.51), as shown on the 2001 printout.
APPEAL BY DEPARTMENT OF HEALTH AND HOSPITALS
On March 28, 2002, DOTD deposited funds totaling $1,978,602.21 into the registry of the court to satisfy its obligation for damages, excluding medical expenses, awarded plaintiffs pursuant to the partial final judgment that had been rendered in Bozeman, supra. In its motion to deposit the funds, DOTD specifically requested that it be authorized to deposit the funds “which are due plaintiff in this matter for *969 satisfaction of the partial final judgment herein.” Thereafter, plaintiff filed an answer to the motion on April 9, 2002, and then filed a motion to withdraw the funds on April 11, 2002, which was granted that same day. On April 16, 2002, the plaintiff received a check from the registry of the First Judicial District Court in the amount of $1,978,938.30, this being the amount deposited by DOTD plus accrued interest.
On April 17, 2002, DHH filed a motion to withdraw funds totaling $319,838.46 from the money deposited by DOTD into the court’s registry. 117 DHH alleged that it had a privilege on the sums deposited by DOTD by virtue of Medicaid expenses paid on behalf of Tommy Bozeman. DHH regarded the deposit of funds by DOTD as the institution of a coneursus proceeding and sought to assert its claim to a share of the funds. In a judgment rendered May 14, 2002, the trial court denied DHH’s motion. The trial court determined that prior to the withdrawal of the funds by the plaintiffs, DHH had not intervened or made any appearance in the proceedings and that because the funds were no longer on deposit with the. court, the motion by DHH to withdraw such funds was moot. DHH appeals the denial of its motion.
La. R.S. 46:446(A) states as follows:
A. When an injury has been sustained or an illness or death incurred by any person under circumstances creating in some third person or legal entity a legal liability or obligation to pay damages or compensation to that person or to his spouse, representative, or dependent, the Department of Health and Hospitals shall have a cause of action against such third party and/or may intervene in a suit filed by or on behalf of the injured, ill, or deceased person or his spouse, representative, or dependent against such third party to recover the assistance payments and medical expenses the Department of Health and Hospitals has paid or is obligated to pay on behalf of the injured, ill, or deceased person in connection with said injury, illness, or death.
The statute further requires the plaintiff in a suit filed by or on behalf of a recipient of Medicaid against a third party to serve a copy of the petition on DHH. La. R.S. 46:446. An intervention by DHH is “not barred by prescription if it was not barred at the time the main demand was filed, provided such intervention is filed within ninety days of date of service of main demand upon the department.” La. R.S. 46:446(E). In addition, the |1sstatute grants DHH a privilege for the amount of medical assistance payments out of the total recovery collected in such suit on behalf of the recipient. La. R.S. 46:446(F).
Nothing in the record indicates that DHH was ever served with a copy of the plaintiffs petition. However, the record shows that DHH knew of the suit. In fact, DHH filed a motion to substitute counsel in 1998. DHH also answered discovery during the course of litigation relative to Medicaid payments made on behalf of Tommy Bozeman and corresponded with the plaintiff regarding this matter. Although DHH clearly had knowledge of this suit on behalf of Tommy Bozeman, DHH never asserted its rights under La. R.S. 46:446(A) by filing an intervention or asserting its own cause of action prior to payment of damages by DOTD into the registry of the court and prior to the withdrawal of these funds by the plaintiff.
In Cole v. State ex rel. Dept. of Transportation and Development, 99-912 (La.App. 3d Cir.12/22/99), 756 So.2d 315, writ denied, 2000-0199 (La.4/7/00), 759 So.2d 766, DOTD challenged the trial court’s award of medical expenses to the plaintiff without ordering payment of a certain sum in preference to satisfy a Medicaid lien by DHH in accordance with La. R.S. 46:446. *970 The Third Circuit concluded that DHH had the opportunity to intervene but did not do so, and found that the trial court was not compelled to award damages to DHH when it chose not to be a litigant in the suit.
In the case sub judice, DHH was not a litigant. It did not intervene even though it had the opportunity to do so. The damages deposited by DOTD into the registry of the court were paid in satisfaction of a judgment [ 1Bin favor of the plaintiff. The deposit of funds by DOTD did not institute a eoncursus proceeding as its motion included no allegations of competing claims for the money. See La. C.C.P. art. 4654. The funds were paid to the plaintiff in satisfaction of the judgment. We find no error in the trial court’s denial of DHH’s motion.
CONCLUSION
For the reasons expressed, in No. 36,-803-CA, we amend the trial court’s award of special damages for medical expenses to reflect the correct amount of claims paid and denied by Medicaid, which totals $355,206.97. Costs are to be divided between the parties. In appeal No. 36,665-CA, we affirm the judgment denying DHH’s motion to withdraw funds deposited into the registry of the court. Costs are assessed to DHH.
AMENDED.
AFFIRMED.

. Appeal No. 36,803-CA is by the plaintiff, Linda Bozeman. Appeal No. 36,665-CA is by the Department of Health and Hospitals.

. The facts as they pertain to the appeal by DHH will be set forth in the section addressing the issue raised by DHH.

. La. C.C.P. art. 862 provides:
Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.

. The amount of the claims written-off under Medicaid is calculated by subtracting the total paid by Medicaid ($319,838.43) from the total of the claims submitted ($622,086.89) to get $302,248.43, the total claims unpaid. From this figure, we subtract the claims denied by Medicaid ($35,368.51), to get the total amount written-off under the program ($266,-879.92).